IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) CRIMINAL NO. 2:18-167-1 |
| THOMAS THORNTON, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

AMBROSE, United States Senior District Judge

**MEMORANDUM ORDER OF COURT**

**I. Introduction**

Defendant has filed a *pro se* Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), as Amended by the First Step Act of 2018. [ECF No. 164].[1] He seeks compassionate release for "extraordinary and compelling reasons" pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i).[2] He contends that his medical condition (hypertension) renders him particularly susceptible to the COVID-19 virus while incarcerated at FCI Elkton. Id. The Government has filed a Response in Opposition [ECF No. 177], and Defendant filed a Reply.

---

[1] Defendant filed an initial Request for Compassionate Release on June 5, 2020. [ECF No. 162]. On June 11, 2020, however, Defendant filed the instant "Amended Request for Compassionate Release" [ECF No. 164] which he asks me to consider in lieu of his June 5, 2020 filing. See ECF No. 164 ("asking that the Court dissolve all previous Request[s] for Compassionate Release and, in their place, accept this Amended Request for Compassionate Release"). No counseled brief was filed in this case. Accordingly, I consider Defendant's filing at ECF No. 164 to be the operative Motion before me.

[2] Defendant specifically requests to be released to home confinement for the remainder of his sentence. [ECF No. 164, at 5.] The courts, however, do not have the power to order the BOP to place a defendant on home confinement or otherwise determine a prisoner's place of incarceration. See, e.g., United States v. Catanzarite, Crim. No. 18-0362, 2020 WL 2786927, at *2 (D.N.J. May 29, 2020) (citing cases); United States v. Rutley, No. 17-CR-56-PP, 2020 WL 4040729, at **6-8 (E.D. Wis. July 17, 2020) ("Section 3264(c) of Title 18 gives the Bureau of Prisons, not the court, the authority to place an inmate on home confinement."). In this regard, I find persuasive the decision rendered by my colleague in United States v. Hawkins, Crim No. 14-106, 2020 WL 3259017 (W.D. Pa. June 16, 2020) (Conti, J.) that such a request should be construed as a motion for immediate release. See United States v. Price, Crim. No. 16-33, 2020 WL 3429167, at *1 n.1 (W.D. Pa. June 23, 2020); see also Catanzarite, 2020 WL 2786927, at *2.

[ECF Nos. 179]. After careful consideration of the submissions, and for the reasons set forth below, Defendant's Motion is denied.

## II. Background

On June 18, 2018, Defendant was indicted and charged with: one count of conspiracy to distribute and possess with intent to distribute quantities of heroin and cocaine in violation of 21 U.S.C. § 846; one count of possession with intent to distribute quantities of heroin and cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); one count of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1); and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). [ECF No. 11]. At the time of his arrest, Defendant was on supervised release for a prior firearms conviction in this District at Case Number 2:05-387. On November 29, 2018, Defendant pled guilty to each of the four counts. [ECF No. 56]. On November 20, 2019, the Court sentenced Defendant to a total of 37 months of incarceration to be followed by 5 years of supervised release. [ECF No. 146].[3] Defendant also agreed to forfeit his interest in certain property, including two firearms, ammunition, and two Airsoft vests. [ECF No. 146, at 8]. Defendant is incarcerated at FCI Elkton with a projected release date of January 5, 2021. He currently is 44 years old.

## III. Analysis

Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons could seek a reduction of sentence. United States v. Handerhan, 789 F. App'x 924, 925 (3d Cir. 2019). Section 603(b) of the First Step Act, entitled "Increasing the Use and Transparency of Compassionate Release," permitted prisoners the right to file compassionate release motions with the court "so long as they first ask the BOP to file a motion on their behalf and then either

---

[3] Specifically, Defendant was sentenced to 10 months at each of Counts 1, 2, and 3, to run concurrently to each other, and 27 months at Count 5, to run consecutive to all other counts. His term of supervised release consists of 3 years at each of Counts 1, 2, and 3, and 5 years at Count 5 to run concurrently. [ECF No. 146].

exhaust the BOP's administrative appeal process or wait 30 days, whichever comes first." United States v. Somerville, 12cr225, 2020 WL 2781585, at * 2 (W.D. Pa. May 29, 2020) (citing 18 U.S.C. § 3582(c)(1)); First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018). The First Step Act thus empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). The statute provides that:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction….
> > >
> > > And that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A).

Here, the Government initially contended that it was unclear whether Defendant exhausted his administrative remedies because "Defendant does not state, and the record does not indicate, that Defendant followed the proper procedure for submitting a compassionate release request to the warden of FCI-Elkton." [ECF No. 177, at 4-5]. In so arguing, however, the Government cited only to Defendant's initial motion at ECF No. 162, and ignored Defendant's amended motion – the operative motion before me – at ECF No. 164. In the amended motion at ECF No. 164, which was filed well before the Government filed its response or corresponded with

FCI-Elkton,[4] Defendant prominently attached both an email, dated May 8, 2020, that he sent to the Elkton warden requesting compassionate release, and a formal written response from the warden, dated May 11, 2020, denying that request. [ECF No. 164-1, 164-2, Exs. A, B]. In a filing dated July 24, 2020, the Government acknowledged that it inadvertently overlooked this documentation. [ECF No. 183]. Because the Government does not otherwise contest exhaustion, I turn to a consideration of whether, after considering the factors set forth in section 3553(a), Defendant has established "extraordinary and compelling reasons" in support of compassionate release.

The Sentencing Commission issued a policy statement related to § 3582(c)(1)(A). It provides, in part, that: "the court may reduce a term of imprisonment … if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that – (1)(A) extraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13. The policy statement then identifies four categories of "extraordinary and compelling reasons." They consist of: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) other reasons as determined by the Director of the Bureau of Prisons. U.S.S.G. 1B1.13 Cmt., App. Note 1(A)-(D). The Defendant bears the burden of proving that extraordinary and compelling reasons exist. See United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020).

---

[4] The Government's Response attaches correspondence from FCI-Elkton, dated June 25, 2020, stating they do not have a RIS ("reduction in sentence") request from Defendant. [ECF No. 177-1]. This correspondence is in response to a June 24, 2020 e-mail from Government counsel to FCI Elkton asking for help obtaining copies of Defendant's initial request to the Elkton warden and Defendant's medical records because Defendant had "omitted" those documents in his motion. [ECF No. 177-1]. As set forth above, however, Defendant's Amended Motion, docketed two weeks prior on June 11, 2020, attaches Defendant's prison medical records as well as his RIS request to the warden and the warden's response thereto. [ECF No. 164-1, 164-2, 164-3, Exs. A-C]. The Government cannot argue it was unaware of Defendant's amended motion because, in addition to the timing, the Government specifically states at the outset of its Brief that it is responding to that very Motion. [ECF No. 177, at 1 (citing Docket Number **164**)]. Indeed, the Government acknowledges in a filing dated July 24, 2020, that it inadvertently overlooked the documentation Defendant attached at Exhibit A relating to his request. [ECF No. 183]. The Government does not challenge the form and/or substance of Defendant's request or the warden's response thereto.

The Application Notes to the policy statement recognize that "extraordinary and compelling reasons" may exist based on the defendant's medical condition. That is, extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition, which substantially diminishes his ability to provide self-care within the correctional facility and from which he is not expected to recover. U.S.S.G. 1B1.13, Cmt., App. Note 1(A)(ii). If Defendant's condition does not meet this standard, I also may assess whether extraordinary and compelling reasons for compassionate release exist other than, or in combination with, this defined ground. U.S.S.G. 1B1.13, Cmt., App. Note 1(D). Smith, 2020 WL 4047485, at **2-3.[5]

Here, Defendant contends that his pre-existing hypertension, coupled with the ongoing Covid-19 pandemic, constitute extraordinary and compelling circumstances in this case. [ECF No. 164]. Defendant further cites medical records from March, April, and early-May, 2020 indicating that he experienced Covid-19-like symptoms during that timeframe, including shortness of breath, headache, stiff muscles, sweats, and chills. Although he was not tested at that time,[6] he was given a chest x-ray that revealed a form of pneumonia consistent with Covid-19. Id. & Ex. C. Defendant states that, although Elkton staff suspected him of having Covid-19 and ordered him to isolate for 14 days with other Covid-19 patients, he initially refused the order due to fear of contracting the virus if he did not actually have it. Id.[7] In his Reply, Defendant asserts that he has

---

[5] As set forth above, the Application Notes to § 1B1.13 of the Guidelines also state that "other reasons" might warrant compassionate release. U.S.S.G. § 1B1.13, cmt. note 1(D). Because this Guideline provision has not been updated since the enactment of the First Step Act, there is a dispute as to whether a court may define what fits into the "other reasons" category, or if such determination is left to the BOP. See United States v. Hammond, Criminal No. 18-184, 2020 WL 2126783, at *4 n.5 (W.D. Pa. May 5, 2020). Consistent with the majority of courts that have considered this issue, I have found that the "catch-all" provision under (D) permits courts to independently assess whether "extraordinary and compelling reasons" exist, and I have conducted such an assessment in this case. See Smith, 2020 WL 4047485, at *3.

[6] Although neither Defendant nor the Government explain why Defendant was not tested initially, caselaw references indicate that Elkton did not have sufficient capability to conduct mass testing at the beginning of the outbreak. See Wilson v. Williams, No. 4:20-CV-00794, 2020 WL 2542131, at *1 (N.D. Ohio, May 19, 2020). As set forth more fully herein, Elkton has greatly increased its testing capacity, and currently engages in in mass testing daily.

[7] Defendant states that after refusing the order, he was issued a misconduct and sent to isolation in the SHU or, "the hole." [ECF No. 164, at 5-6]. After 12 days in the SHU, he joined the other Covid-19 patients

since been tested for Covid-19 twice in the past 40 days (at least as recently as June 24, 2020), and has tested negative both times. [ECF No. 179, at 13-14].

With respect to hypertension, the Government notes that while "pulmonary hypertension" (high blood pressure in the lungs) is identified by the CDC as a condition known to cause "higher risk for severe illness from COVID-19," regular or essential hypertension (high blood pressure) is not. [ECF No. 177, at 8-9, and citations therein)]. The CDC, however, does list hypertension as a condition that "might" place sufferers at an increased risk for severe illness from Covid-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 29, 2020).[8] Although I certainly am sympathetic to Defendant's hypertension diagnosis, and do not dismiss the CDC's findings that hypertension is a potential risk factor, I find that the record fails to demonstrate that Defendant's condition is serious enough in nature in and of itself to warrant release. The medical records Defendant has provided indicate that Defendant's high blood pressure has been treated at Elkton with medication including Hydrochlorothiazide and Lisinopril. [ECF No. 164-3, Ex. C]. The records likewise do not document any hypertension-specific incidents requiring medical care during his incarceration. Although it is unknown whether Defendant's hypertension played a role in the severity of his Covid-19-like symptoms in Spring 2020, Defendant does not contend he is currently suffering from Covid-19 symptoms or experiencing serious symptoms related to his hypertension. There also is no indication that he currently lacks access to his medication or to appropriate care for his hypertension in prison. To merit compassionate release, Defendant must show more than mere

---

in isolation. Id. Defendant contends that he was not released from isolation after 14 days with the other patients and was issued a second misconduct for yelling at a corrections officer after trying to be seen. Defendant asserts that, after this second incident, he was removed from isolation and again placed in the SHU. Id.; see also ECF No. 164-3, 164-5, 164-6, Exs. C (at p.6, 11), E, F.

[8] In its Response, the Government cites to the CDC website as updated on May 14, 2020. [ECF No. 177, at 8]. On June 25, 2020, the CDC updated its website to, inter alia, add hypertension to its list of conditions that "might" increase the risk of severe illness from Covid-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited July 29, 2020). The CDC's statement, however, is based on "mixed evidence." Id. "Mixed evidence" means that multiple studies have reached different conclusions about the risk associated with a condition. See id.

fear or speculation concerning the possibility of contracting the virus. See, e.g., United States v. Fry, 2020 WL 1923218 (D. Minn. Apr. 21, 2020); United States v. MacKenzie, 2020 WL 2104786 (D. Mass. May 1, 2020). The mere chance that Defendant may contract the virus (possibly for a second time) and be more susceptible to complications if he does so is not enough on its own to demonstrate extraordinary and compelling circumstances supporting release in this case.

In evaluating Defendant's medical conditions, however, I also have considered the impact of the Covid-19 pandemic at FCI-Elkton. Without a doubt, Elkton has been one of the hardest-hit federal prison facilities in terms of Covid-19. See United States v. Montanez, Case # 15-CR-122-FPG, 2020 WL 4218007, at *3 (W.D.N.Y. July 23, 2020). On April 3, 2020, Attorney General William Barr specifically identified FCI-Elkton as a facility facing "significant levels of infection" and directed the BOP to increase the use of home confinement for prisoners housed at Elkton and other similarly situated federal facilities. See id.; see also https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf. In addition, the conditions at FCI Elkton are presently being litigated in a class action lawsuit brought by inmates. See Wilson v. Williams, Case No. 4:20-cv-794, 2020 WL 1940882, at *2 (N.D. Ohio Apr. 22, 2020), preliminary injunction vacated by No. 20-3447, 2020 WL 3056217 (6th Cir. June 9, 2020).[9] As of July 29, 2020, FCI Elkton had: 2,196 total inmates, 86 inmates and 2 staff members positive for Covid-19; 9 total inmate deaths; zero staff deaths; 916 inmates recovered; and 51 staff recovered. See https://www.bop.gov/coronavirus/ (last visited July 29, 2020). In total, as of that date, Elkton has tested at least 2,182 inmates, with 993 of those inmates testing positive. See id.

Despite these seemingly dire numbers, FCI Elkton has shown signs that BOP measures designed to protect inmates such as visitation restrictions, mass testing, and modifications to

---

[9] In the course of the class action lawsuit, the court instructed the BOP to identify the prisoners at Elkton at a high risk of serious illness or death in the midst of the Covid-19 outbreak there. Wilson v. Williams, Case No. 20-cv-0794, Docket No. 32 (N.D. Ohio, Apr. 29, 2020). Defendant Thornton was not included on that list. See id. Docket No. 35-1 (filed April 30, 2020).

facility operations are helping to curtail the spread of the virus. See Montanez, 2020 WL 4218007, at *3; United States v. Gentle, No. CR 18-0279 (DWF/KMM), 2020 WL 4018216, at **3-4 (D. Minn. July 16, 2020). According to Status Reports filed on July 27 and 28 in the class action case, Elkton administered 73 Covid tests over the weekend of July 24-26, 2020, with zero positive results, and 11 tests on July 27, with only one positive result. Wilson v. Williams, Case No. 20-cv-0794, Docket Nos. 162, 165. Also, although nine inmates have died of Covid-19 while incarcerated at FCI Elkton, all of those deaths occurred prior to early May. See Montanez, 2020 WL 4218007, at *3. In short, although the evidence indicates that Defendant may face a greater risk of contracting Covid-19 at Elkton than at other locations, the degree of risk is not as high as Defendant suggests and appears to be diminishing daily even as cases of Covid-19 rise outside of the prison. Moreover, "[t]he existence of the virus in a prison – even the level of infection at Elkton – is not sufficient to establish extraordinary and compelling circumstances without some proof that the defendant is at more severe risk for infection than his fellow inmates." United States v. Rutley, No. 17-CR-56-PP, 2020 WL 4040729, at **6-8 (E.D. Wis. July 17, 2020); see also Gentle, 2020 WL 4018216, at *4 (noting that, in light of Elkton's current measures to mitigate the spread of Covid-19, "merely being incarcerated at FCI Elkton is insufficiently extraordinary or compelling to warrant immediate release"). As set forth previously, Defendant has not demonstrated that his hypertension treated with medication poses that severe risk.

For all of the above reasons, although I recognize the gravity of the Covid-19 pandemic and am sympathetic to Defendant's concerns for his health and safety, I find that these concerns at this moment in time are too generalized to be considered "extraordinary and compelling" for purposes of compassionate release.[10]

---

[10] Defendant also contends compassionate release is warranted for family reasons because the mother of his two daughters, Ms. Anderson, has encountered difficulties caring for their minor teenage child. Specifically, Ms. Anderson is caring for her 8-year old son who has a history of cancer, which makes it difficult for her to care for Defendant's daughter as well. [ECF No. 164; ECF No. 164-7]. Defendant further submits that Ms. Anderson has lost her job and her home as a result of her son's illness. See id. The Sentencing Guidelines identify extraordinary and compelling reasons for compassionate release for family

Even if I accept that the current situation at FCI Elkton coupled with Defendant's medical condition gives rise to extraordinary and compelling circumstances, these considerations do not outweigh the Section 3553(a) factors. See United States v. Pawlowski, ___ F.3d ___, 2020 WL 4281503, at *2 (3d Cir. June 26, 2020) ("Before granting compassionate release, a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable.'"). As the Court of Appeals for the Third Circuit recently affirmed, whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the Court. See id.

After consideration of the Section 3553(a) factors in conjunction with the Covid-19 pandemic and the existing conditions at FCI Elkton, I find that release in this case is unjustified given the nature, circumstances and seriousness of Defendant's offense, Defendant's history and characteristics, and the needs for protection of the public, just punishment, and deterrence. Defendant's multiple offenses in this case were serious, including both drug trafficking and firearms violations.[11] Defendant also agreed to forfeit his interest in property that included handguns and ammunition. Moreover, in imposing sentence in this case, I varied significantly from the Guideline range in Defendant's favor and sentenced him to 37 months total imprisonment – well below the 84 total months that marked the low end of the Guideline range. Given the serious nature of his offenses, a further reduction in Defendant's sentence would undermine the need for his sentence to reflect the seriousness of the offense, to afford adequate deterrence, to promote respect for the law, to provide just punishment, and to avoid unwarranted sentencing disparities.

---

circumstances involving, in relevant part, (i) the death or incapacitation of the caregiver of the defendant's minor child or minor children. U.S.S.G. § 1B1.13, cmt. note 1(C). While I am sympathetic to Defendant's family circumstances, they do not involve incapacitation or death of a caregiver as described in Note 1(B) or otherwise rise to the level of extraordinary and compelling circumstances contemplated by the "other reasons" provision in 1(D).

[11] The nature of Defendant's crimes (drug distribution and firearms possession in his community) as well as the fact that he committed the instant crimes while on supervised release for a firearms violation in another federal case also raise the fear that Defendant also would be a danger to the community if released early. See 18 U.S.C. § 3142(g); U.S.S.G. § 1B1.13(2).

I also have considered Defendant's criminal history and, significantly, the fact that Defendant was on supervised release for another federal firearms violation when he committed the offenses at issue in this case.[12] As one court has aptly explained, while "[a] just punishment should not include an unacceptable risk of exposure to Covid-19 or any potential lethal disease, . . . neither should the uncertainty engendered by the present crisis be allowed to distort or subvert a just punishment." Montanez, 2020 WL 4218007, at *5 (internal quotations and citation omitted).

In light of the above, I cannot confidently conclude that additional incarceration is unnecessary to prevent Defendant from committing further offenses or to protect the public from such. Rather, I find that his sentence remains sufficient, but not greater than necessary, to meet all of the goals of sentencing. Accordingly, I find that, in addition to the lack of "extraordinary and compelling" reasons, the § 3553(a) factors weigh heavily against compassionate release.

THEREFORE, this 29th day of July, 2020, it is ordered that Defendant's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), as Amended by the First Step Act of 2018, [ECF No. 164] is DENIED.

BY THE COURT:

*Donetta F. Ambrose*

Donetta W. Ambrose
United States Senior District Judge

---

[12] Defendant also admits to receiving at least two misconduct violations during his current incarceration for refusing isolation orders and yelling at a female corrections officer during the time he was exhibiting Covid-19-type symptoms.